UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NINA E. VAN JACOB, by her mother and court appointed guardian, ELIZABETH VAN JACOB,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. KILOLO KIJAKAZI,<br>Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | CAUSE NO.: 3:20-CV-350-HAB |

**OPINION AND ORDER**

Plaintiff Nina E. Van Jacob seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for Childhood Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §402(d) and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Plaintiff alleges that she has been disabled since January 16, 1998, because of a variety of mental impairments, including depression, bipolar disorder, borderline personality disorder, attention deficit hyperactivity disorder (ADHD), social anxiety, autism spectrum disorder, and obsessive compulsive disorder. Because the evidence substantially supports the ALJ's decision to deny her benefits, the Commissioner's decision will be AFFIRMED.

**A.    Procedural Background**

On March 1, 2017, the Plaintiff protectively filed both a Title II application for child's insurance benefits and an application for supplemental security income, alleging disability beginning on January 16, 1998. These claims were denied initially and upon reconsideration. On

November 16, 2018, the Plaintiff and her mother appeared with their attorney and testified at a video hearing before an administrative law judge (ALJ). Monika Dabrowika, a vocational expert, also appeared at the hearing.

On May 3, 2019, the ALJ denied the Plaintiff's application finding she was not disabled. After the Appeals Council declined to review it, the decision became the Commissioner's final decision for purposes of judicial review.

### B. The ALJ's Decision

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing any past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and work experience and evaluate whether she can engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ must evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the

claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

Here, at step one, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged disability onset date. (R. 12). At step two, the ALJ found that Plaintiff had the severe impairments of depression, bipolar disorder, borderline personality disorder, ADHD, social anxiety, autism spectrum disorder, and OCD. (*Id.* at 13). The ALJ stated that these impairments significantly limit her ability to perform basic work activities. At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.*) The ALJ considered listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety disorders), 12.08 (Personality disorders and impulse-control orders), 12.10 (Autistic disorder and other pervasive developmental disorders), and 12.11 (Neurodevelopmental Disorders) and found no evidence of listing level impairment. (*Id.*) Specifically, the ALJ found that the Plaintiff did not "manifest clinical signs and findings that meet the specific criteria of any of the Listings." (*Id.*). The ALJ determined that the "paragraph B" criteria were not satisfied in that the Plaintiff did not have at least one extreme or two marked limitations in a broad area of functioning. (*Id.* 13-14). The ALJ further determined that the evidence did not establish the "paragraph C" criteria. (R. 19).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> She can understand, remember, and carry out simple and routine tasks that consist of one to two step instructions and involve …performing essentially the same task, in the same place, every day. She is also limited to a work environment that is: free of fast paced or timed piece rate production work where she needs only to meet end of day goals; limited to work in a low stress job defined as not requiring the worker to cope with work-related circumstances that could be dangerous to the

> worker or others; and limited to work that requires no more than occasional routine judgment defined as being able to make simple work related decision[s]. She os also limited to jobs that do not require interaction with the public, require only occasional interaction with supervisors and coworkers, and cannot perform tandem tasks with co-workers or teamwork where one production step is dependent on a prior step.

(R. 16).

Based on the above RFC and her hypothetical questions to the vocational expert, the ALJ found Plaintiff to be able to perform work that exists in significant numbers in the national economy, including a bagger, laundry worker, or housekeeping cleaner. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

### C. Standard of Review

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however, it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a

critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**D. Analysis**

Plaintiff contends that two critical defects infect the entire decision by the ALJ. These include her assertion that the ALJ cherry-picked the evidence by "highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in functioning." (ECF No. 17 at 9). Second, she argues that the decision fails to provide an accurate and logical bridge to support the ALJ's conclusion. Plaintiff offers three arguments in favor of remand which she contends demonstrate the existence of these two critical flaws in the record. She contends that: (1) the state agency consultants' opinions were flawed because they were outdated and incomplete; (2) Plaintiff met the criteria for listing 12.04 and should have been deemed

5

disabled at step 3 of the analysis; (3) the ALJ erred in weighing the evidence. After a thorough review of the record, the Court concludes that Plaintiff's arguments are not well taken.

    **I.    The State Agency Consultants' Opinions**

Plaintiff asserts that the ALJ erred by accepting the outdated and incomplete opinions of the State Agency consultants. The ALJ considered the 2017 opinions of two State Agency psychologists: S. Hill, Ph.D, who examined the Plaintiff's records at the initial level in July 2017; and Ken Lovko, Ph.D., who examined the Plaintiff's records at the reconsideration level in October 2017. Thus, at the time of the November 2018 administrative hearing, the consultants' opinions were sixteen and thirteen months old, certainly within the realm of proper opinion evidence to be considered. *Rust v. Colvin*, No. 2:12-CV-325-PRC, 2013 WL 3935072, at *15 (N.D. Ind. July 30, 2013) (opinions a little over a year old at the time of hearing not outdated).

As for the opinions themselves, Dr. Hill found from his review that Plaintiff had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentration, persistence, or maintaining pace; and no limitation in adapting or managing oneself. The ALJ afforded this opinion "some weight" explaining that she believed more weight should be attributed to Dr. Lovko's opinion who examined Plaintiff's records at the later stage of the proceedings. That said, however, Dr. Lovko's opinion varied only slightly from Dr. Hill's. In relation to interacting with others, Dr. Lovko found that Plaintiff had a moderate, rather than mild, limitation. The ALJ found Dr. Lovko's opinion consistent with the general pattern of evidence submitted in the hearing level record and "this opinion is generally consistent with the significant psychiatric signs from numerous clinical examinations." (R. 24).

Despite the consistency of these opinions, Plaintiff points to numerous pieces of evidence over the course of a decade, such as the Plaintiff's many hospitalizations, institutional residential treatments, objective tests, abnormal mental status exams, and observations of abnormal behavior, which she claims were not considered by the State Agency consultants. But even assuming Plaintiff is correct, remand is not required where, as here, the ALJ considered this very evidence. The evidence Plaintiff points to was not ignored in the ALJ's decision. Indeed, the ALJ took great pains to detail much of this evidence. For instance, the ALJ's decision devoted significant analysis to the Plaintiff's psychiatric hospitalization and treatment history. (R. 18-22). The ALJ noted that Plaintiff was admitted to in-patient treatment for psychiatric treatment beginning in childhood and continuing through 2014. She detailed the results from various functional tests, including the Wechsler Intelligence Scale for Children, and summarized findings from mental status reports/examinations administered to the Plaintiff as far back as February 2008. She identified the specifics of Plaintiff's hospital admissions related to her mental health conditions, catalogued treatment notes from various outpatient office visits, and discussed the Plaintiff's medication history as set out in the medical records. Thus, because the ALJ considered the very evidence Plaintiff contends the state agency consultants did not consider, Plaintiff fails to demonstrate harm. Further, in considering the evidence in tandem with the state agency consultants' opinions, the ALJ built a logical bridge between her conclusions and the evidence.

**II. Listing 12.04**

Next, Plaintiff asserts that the ALJ erred by her finding that the Plaintiff failed to meet the criteria for Listing 12.04. In considering whether a claimant's condition meets or equals a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). And as with all analyses by

the ALJ, the ALJ must "build a logical bridge from the evidence to [ ] conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). To show that a listing is met or equaled, the claimant bears the burden of showing that his impairment satisfies "all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citation omitted).

As discussed above, the ALJ concluded that Plaintiff's conditions did not meet the criteria of any Listing considered, including Listing 12.04. Listing 12.04 contains three sets of criteria set out in Paragraphs A, B, and C, and may be satisfied by meeting the requirements of Paragraph A, along with either Paragraph B or Paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph B requires an "extreme" limitation in at least one of the four functional areas or a "marked" limitation in at least two areas. *Id.* Here, the ALJ assessed the four broad functioning areas of mental functioning and found Plaintiff had a moderate limitation in three of four areas, and a mild limitation in understanding, remembering, or applying information. The ALJ further noted that the State Agency consultants "have evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (R. 13). For this reason, the ALJ concluded that the 'paragraph B' criteria are not satisfied. (R. 16).

The "Paragraph C" criteria for the relevant listings under 12.00 are used "to evaluate mental disorders that are 'serious and persistent,'" while recognizing that "mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(G)(1). The ALJ considered the paragraph C criteria but concluded that the evidence fails to establish the presence of those criteria. (R. 16)

    a. **Paragraph B Criteria**

Plaintiff contends that the ALJ should have found that she had "extreme limitations" rather than moderate limitations in interacting with others and adapting and managing oneself. Having

reviewed the evidence supporting the ALJ's findings of moderate limitation in these areas, the Court finds that substantial evidence supported the ALJ's decision.

Plaintiff asserts that the moderate limitation in interacting with others stemmed from the evidence that Plaintiff has been "generally pleasant and cooperative during exams." (ECF No. 17 at 19). But here, the ALJ considered the medical evidence on the whole along with the Plaintiff's own statements of her limitations, her function reports, her psychological examinations, mental status examination and the State Agency consultants' opinions to reach her conclusion. For instance, the ALJ relied on a function report wherein the Plaintiff reported that she had problems getting along with family, friends, and neighbors. She had been fired from a job because of problems getting along with others. (R. 14). In a second function report, Plaintiff reported her medical conditions affect her ability to get along with others. (*Id.*). The ALJ also detailed the Plaintiff's hearing testimony that she suffers from panic attacks, social anxiety, and paranoia. Plaintiff testified she had a boyfriend and is able to fly on an airplane to see him despite the overwhelming nature of that experience. The ALJ then countered this evidence with the clinical and diagnostic record, which she determined provided no support for more than moderate limitation in this area, and the opinion evidence from Dr. Lovko. (*Id.*). She also noted that despite Plaintiff's history of behavior and mood issues, multiple mental status examinations show "generally pleasant and cooperative behavior during clinical examinations except for intermittent issues." (*Id.*)

The ALJ also found that Plaintiff was moderately limited in the functional area of adapting or managing herself, which refers to "the abilities to regulate emotions, control behavior and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00 (E)(4). Again the ALJ relied on Plaintiff's own statements as well as the medical and opinion evidence. The ALJ

noted that Plaintiff reported in a functional report that she has problems dealing with stress and routine changes. She reported some difficulty with personal care but was able to prepare her own meals, perform light household chores and take care of pets (R. 15). The ALJ examined the medical evidence highlighting her prior brief psychological hospitalizations but noting that "since December 2014, she has not required any significant psychiatric hospitalizations and the recent records show that her mental symptoms have significantly improved with her compliance with her prescribed medications." (R. 16). Further the ALJ found that Plaintiff had the ability to travel by airplane, attend college classes and provide care for her boyfriend's child. As for the opinion evidence, the ALJ noted that Dr. Lovko found only a mild limitation in this area of functioning; but she determined that a greater limitation was warranted based on all the evidence. (R. 15).

Plaintiff asserts that the ALJ erred by not specifically mentioning certain evidence in the record or by only plucking evidence from the record favorable to denying Plaintiff's disability claim, i.e. cherry-picking. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). That said, an ALJ need not specifically address every piece of evidence in the record, as long as she provides a "logical bridge" between the evidence and h[er] conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

Plaintiff asserts that the ALJ's conclusion that the Plaintiff's mental health conditions had significantly improved are unsupported by the evidence and overlooks "many instances of fluctuating mood and behavior and discounted other evidence of instability including statements from Plaintiff's family, counselors, and professors…" (ECF No. 17 at 11). However, despite making that blanket statement, Plaintiff does not point directly to any particular evidentiary item

that was ignored. Perhaps this is because her argument is simply belied by the decision itself. The ALJ's decision shows that she considered not only the objective medical record but evidence from various sources, including statements and opinions from: the Plaintiff's family friend, April Lidinsky, Ph.D; Plaintiff's mother; Plaintiff's treating physicians, Michael Platt, M.D., Steven Best, M.D. and Suhayl Nasr, M.D.; Plaintiff's psychology and English professors at Ivy Tech Community College; and Plaintiff's religious counselor, Javaughn Fernanders. (R. 25-27). The ALJ recounted the evidence from these individuals and assessed weight to their statements and opinions. Thus, it is not a fair characterization that the ALJ disregarded evidence from third parties in formulating her conclusions. Rather, she included it and assessed it weight along with the other evidence in the record.[1]

Plaintiff also objects to the ALJ's determination that the opinions of her treating physicians Drs. Platt, Best, and Nasr were given little weight in the analysis. As for all three physicians, the ALJ gave their opinions little weight because each time she found the opinions "inconsistent with the general pattern of evidence in the hearing level record."

Beginning with Dr. Platt, the ALJ noted that he submitted a letter on behalf of the Plaintiff and indicated he had been the Plaintiff's treating psychiatrist since May 2011. His last treatment date for the Plaintiff was in October 2016, over two years prior to the administrative hearing in this case. He opined that the Plaintiff had been "unable to develop required interpersonal skills and

---

[1] Further, the fact that the discussion of the third-party statements occurs related to the RFC determination and not during the discussion of the Listings, is of no moment. The ALJ need not discuss and expressly reference every piece of evidence in the record "nor is [s]he required to place h[er] discussion of the evidence in the section of the decision regarding the listings or to repeat h[er] factual analysis." *Wright v. Astrue,* No. 2:11-cv-357-PRC, 2012 WL 3818219, at *8 (N.D.Ind. Sept. 4, 2012) While there may have been bits of evidence that the ALJ opted not to include in her discussion of the listings or in her decision, the ALJ thoroughly considered the issues and substantial evidence supported her determinations. *Hays v. Berryhill*, 2:18-cv-00129-JVB-JEM, 2019 WL 3183619, at *4 (N.D.Ind. July 15, 2019) ("Although Plaintiff may not agree with the ALJ's treatment of the evidence, the ALJ did not cherry pick or ignore evidence.").

stress tolerance necessary to maintain employment" and that she had "only a limited ability to interact with others and maintain stress tolerance." (R. 24). (*Id.*).

Next, the ALJ considered the opinion of Dr. Best, a treating physician who had completed a medical source statement for a guardianship in February 2013 and whose opinion was based on six months of treatment. Dr. Best opined that Plaintiff cannot make personal or financial decisions. (R. 25). Specifically noting the length of treatment, the ALJ similarly discounted Dr. Best's opinions finding them inconsistent with the evidence in the hearing level record.

Finally, the ALJ considered the opinion of Dr. Nasr, a treating physician who drafted a letter on Plaintiff's behalf in April 2014. Plaintiff was in his care sporadically from 2009 through 2012. He opined that (1) she could not maintain employment because of poor interpersonal relationships; (2) she struggled to listen to inputs from others or incorporating the needs of others into her daily activities; (3) she was very self-absorbed based on her need to interpret what she's being told to do by others; (4) her behaviors make it difficult to sustain employment or personal relationships; and (5) she cannot work eight hours a day, five days per week, for more than a few days at a time.

Plaintiff contends that the "treating physician rule" requires the ALJ to give the opinion of a treating physician controlling weight if (1) it is supported by objective evidence, and (2) is not inconsistent with other substantial evidence. When an ALJ gives a treating source opinion less than controlling weight, the ALJ must provide "good reasons." *See* 20 CFR §404.1527(c)(1)-(6). Plaintiff argues the ALJ's general disclaimer that the opinions were "inconsistent with the general pattern of evidence in the hearing level record" cannot explain why she gave little weight to the treating physicians.

Plaintiff is correct that the ALJ's generic dismissal of why she discounted the Plaintiff's treating physicians opinions appears superficial and conclusory. But when viewed as a whole, the ALJ's decision provides sound reasons to discount their opinions. *See Deloney v. Saul*, 840 Fed. App'x 1, 5 (7th Cir. 2020) ("additional evidence" cited by ALJ "elsewhere in his decision" adequately explained why he discounted treating physician opinion for conflicting with record); *Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. App'x 674, 678-79 (7th Cir. 2010) ("[W]e read the ALJ's decision as a whole and with common sense."). The ALJ repeatedly explained throughout the opinion why the record did not support more severe limitations. For instance, the ALJ noted that more recently than the physicians' opinions, Plaintiff appeared to experience improvements in her conditions. By Plaintiff's own statements, she could travel, maintain a long-term relationship with her boyfriend and his child, attend college, and engage in basic daily activities. All of this evidence conflicted with the older opinions of the treating physicians and was consistent with the assessments of the State agency consultants.

The ALJ referenced a host of functional reports and mental status examinations along with the opinion evidence to sometimes confirm what the Plaintiff reported and, in other instances, to call it into question. Plaintiff testified she had panic attacks and social anxiety and, as the ALJ pointed out, also could navigate traveling by airplane. At least sometimes, then, Plaintiff could interact despite her medical conditions. This contrasted with the treating physicians' opinions. Plaintiff focuses on other evidence which she contends points the other way; however, the ALJ weighed and considered all the evidence including relevant medical treatment documentation, Plaintiff's self-reported issues and third-party reports. She built a logical bridge between the evidence and her conclusions.

In sum, the ALJ properly summarized the treatment records in her decision, including summarizing much of the same evidence that the Plaintiff urges the Court should reevaluate. Moreover, to the extent the ALJ chose one line of evidence over another does not require remand. Indeed, "when there is substantial evidence pointing in both directions, an ALJ does not cherry-pick when [he] embraces one of two possible positions." *Mosley v. Berryhill,* No. 3:15-CV-615-PPS-MGG, 2017 WL 3016386, at *5 (N.D. Ind. July 17, 2017). The ALJ discussed the Paragraph B criteria, cited to record evidence supporting a moderate limitation in two areas rather than something more severe, and built a bridge between that evidence and her conclusions. The Court does not engage in deciding which facts the ALJ should have chosen, reweighing the evidence or substituting its own judgment for the ALJ. Accordingly, the Court finds that the ALJ did not err in her determination that the Paragraph B criteria was not met.

    b. **Paragraph C Criteria**

Turning next to the Plaintiff's assertion that the ALJ erred in not finding that she met the Paragraph C criteria, Plaintiff had the burden of showing her mental disorder was "serious and persistent." This requires the Plaintiff to show a medically documented history of the existence of the disorder over 2 years and evidence that shows that the individual relies, on an ongoing basis, upon medical treatment or mental health therapy to diminish the symptoms and signs of the mental disorder, but that despite the diminished symptoms and signs, the individual has achieved only marginal adjustment, meaning she has minimal capacity to adapt to changes in her environment. 20 C.F.R. Pt. 404, Subpt. P, App 1 §12.00. Translated differently, the Plaintiff must demonstrate that despite diminished symptoms from ongoing treatment, her adaptation to the requirements of daily life was fragile, "for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial reports." *Id.* at §12.00G(2)(b)-(c).

Here, the ALJ considered the paragraph C criteria and explained the evidence showing where Plaintiff fell short of the criteria. The ALJ explained as follows:

> The claimant's mental impairments are not "serious and persistent," because the claimant does not have medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder. Moreover, there is no evidence of marginal adjustment, that is there is no evidence that the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's life.

(R. 16.) From this evidence, the ALJ determined a lack of Paragraph C criteria.

Plaintiff argues that the ALJ failed to evaluate evidence in the record of her "marginal adjustment" such as the affects her acute anxiety had on her ability to attend school or her past hospitalizations. However, as the Government points out, the ALJ explained in the discussion of the "Paragraph b" all the ways in which Plaintiff had marginally adjusted – she could care for herself, prepare meals, perform light housekeeping and take care of pets. The ALJ discussed that Plaintiff had not required hospitalization since 2014 and her symptoms were improved with consistency in medication. Based on this evidence, the ALJ reasonably determined that the Paragraph C criteria was not met.

## III. Weighing the Evidence

Although the Court has addressed the ALJ's weighing of the evidence as part of the discussion above, Plaintiff makes additional arguments that the RFC is unsupported by the evidence. The Court disagrees. The residual functional capacity (RFC) measures what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based on the medical evidence in the record and other evidence, such as testimony by the claimant or her friends

and family. 20 C.F.R. § 404.1545(a)(3). In making a determination, the ALJ must decide which treating and examining doctors' opinions should receive weight, and explain the reasons for that finding. 20 C.F.R. § 404.1527. Additionally, the ALJ's RFC assessment must contain a narrative discussion describing how the evidence supports the ALJ's conclusions and explaining why any medical source opinion was not adopted if the ALJ's RFC assessment conflicts with such an opinion. SSR 96–8p, 1996 WL 374184, at **5, 7; *accord Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to provide adequate reasons for it. The Commissioner defends the ALJ's decision, arguing that the ALJ adequately explained the reasons behind the ALJ's crafting of the RFC. Reviewing the record as a whole, the Court finds that the ALJ met her burden to explain which opinions she accepted and which she discounted and why. An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making her RFC determination. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995)). The ALJ's responsibility is to "consider the entire record." *Id.* As explained above, the ALJ articulated her reasons for the weight she assigned to the State agency consultant's conclusions as well as the conclusions of the treating physicians. In doing so, the ALJ cannot be accused of ignoring an entire line of evidence, or selecting and discussing only the evidence that favored her ultimate conclusion. This Court is thus left with the prospect of inappropriately reweighing evidence, resolving conflicts, deciding questions of credibility, or substituting its own judgment for that of the Commissioner. Under the deferential standard of review, Plaintiff has not identified grounds for remand.

**CONCLUSION**

For the reasons stated above, the Court AFFIRMS the decision of the Commissioner. The Clerk is directed to enter judgment in favor of the Commissioner.

SO ORDERED on September 30, 2021.

                                            s/ *Holly A. Brady*
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT